IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:09-CR-57-FL
No. 4:12-CV-229-FL

| | |
|---|---|
| PAUL CLAUDIO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (DE 112). The government has filed a motion to dismiss (DE 116), to which petitioner has responded, including a claim pursuant to United States v. Simmons, 649 F.3d 237 (4th Cir. 2011). The court held this matter in abeyance pending decision in Miller v. United States, 735 F.3d 141 (4th Cir. 2013), and then directed supplemental briefing, which has been received. In this posture, the matter is ripe for ruling. For the reasons stated below, the government's motion will be granted and petitioner's motion will be dismissed.

**BACKGROUND**

Following a two day trial, a jury convicted petitioner of one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Petitioner was sentenced on April 14, 2010, to a term of imprisonment of 105 months. Petitioner appealed, and the appeals court affirmed the conviction and sentence on September 26, 2011. Petitioner filed the instant motion to vacate on October 1, 2012, alleging numerous claims of error at trial and sentencing, ineffective assistance of

counsel, and newly discovered evidence in the form of a statement by petitioner's daughter dated June 18, 2012, as amended September 10, 2012. The government filed a motion to dismiss for failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6), asserting that petitioner procedurally defaulted on his claims of trial and sentencing error, and that his ineffective assistance of counsel and newly discovered evidence claims are without merit.

Petitioner responded in opposition to the motion to dismiss on December 3, 2012, which response included an additional claim of miscarriage of justice due to application of <u>Simmons</u> to the predicate extortion conviction underlying petitioner's offense. Petitioner filed a supplement on July 8, 2013, suggesting that the court should apply <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013), and <u>Descamps v. United States</u>, 133 S.Ct. 2276 (2013) to his case. The court held this matter in abeyance pending decision in <u>Miller v. United States</u>, 735 F.3d 141 (4th Cir. 2013), and then directed supplemental briefing. Petitioner filed a supplemental memorandum on September 10, 2013, in further support of his claims, including excerpts from the record and transcripts. Petitioner filed a supplemental brief and reply brief addressing application of <u>Miller</u>. The government filed a response to the supplemental brief.

**COURT'S DISCUSSION**

A.  Standard of Review

Rule 12 of the Rules Governing Section 2255 Proceedings states that, "[t]he Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

2

678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In evaluating whether a claim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the plaintiff, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id. While pro se complaints should be liberally construed, they are not exempt from the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555).

B.   Analysis

   1.   Claims Raised on Appeal

Issues litigated on direct appeal are not subject to collateral attack absent an intervening change in the law. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (citing Boeckenhapt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)). Plaintiff raises several claims that are barred on this basis. In particular, his challenges to the obstruction of justice enhancement (Ground Two), the upward departure (Ground Three), failure to produce Maria Claudio's Violence Against Women's Act petition (Ground Four), denial of motion to strike testimony of Maria Claudio regarding assault and rape by petitioner and cocking a 9mm handgun (Ground Five), are barred because these claims were raised and rejected on appeal. See United States v. Claudio, 447 Fed. Appx. 456, 458-460 (4th Cir. 2011).

3

### 2. Procedurally Defaulted Claims

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). Accordingly, under the procedural-default rule, ordinarily, "claims not raised on direct appeal may not be raised on collateral review." Massaro v. United States, 538 U.S. 500, 504 (2003). "A procedural default, however, may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom." United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)). In addition, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro, 538 U.S. at 504.

Petitioner raises several claims that were not raised on appeal: he was not mentally competent to stand trial (Ground Six), violation of speedy trial rights (Ground Seven), invalid arrest warrant (Ground Eight), failure to read Miranda rights (Ground Nine), no probable cause to enter and search his home and to arrest (Ground Ten). These claims are thus procedurally defaulted unless petitioner can demonstrate actual innocence or cause and prejudice.

Petitioner suggests that he has established cause and prejudice due to ineffective assistance of counsel in failing to raise these arguments at trial, among other deficiencies. See Murray v. Carrier, 477 U.S. 478, 488 (1986) ("Ineffective assistance of counsel ... is cause for a procedural default."). Petitioner also claims that he is actually innocent of the offense of conviction, both because of Simmons and on the basis of newly discovered evidence. As set forth below, the court finds each of these contentions to be without merit. Accordingly, the court will dismiss these claims

4

(Grounds Six through Ten of the habeas petition) as procedurally defaulted.

      3. <u>Simmons</u> claim

Petitioner contends that he is actually innocent of his felon in possession of a firearm conviction because the predicate offense of extortion underlying the conviction was not a felony, in light of the fact that he served only a term of probation. The government contends that petitioner's extortion conviction remains a proper predicate under <u>Simmons</u>, and that the claim therefore must be denied for lack of merit.

<u>Simmons</u> "requires examination of three pieces of evidence: the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range." <u>Simmons</u> 649 F.3d at 247 n. 9. "All three appear prominently on the first page of an offender's state record of conviction." <u>Id.</u> "From this, it is a simple matter to refer to the statutory table provided by the Structured Sentencing Act and compute the applicable maximum punishment." <u>Id.</u>

The parties stipulated at trial that petitioner's extortion offense constituted a predicate offense for purposes of petitioner's felon in possession charge. In particular, they stipulated as follows:

> That on April 19, 2006, the defendant was convicted of extortion, a felony. That is a crime punishable by a term of imprisonment exceeding one year, and that the defendant's civil rights to possess a firearm had not been restored.

(Tr. at 46 (DE 91)). A copy of petitioner's April 19, 2006, judgment of conviction is attached to his supplemental memorandum. (DE 123-1). It provides that petitioner was convicted of extortion, a Class F felony. It provides that petitioner has a prior record level of II. And it provides that the court made no findings of any aggravating factors, and made findings of two mitigating factors: "[t]he defendant supports the defendant's family," and "[t]he defendant has a support system in the

5

community." (Id.). It further provides that "factors in mitigation outweigh the factors in aggravation and that a mitigated sentence is justified." (Id.).

In light of this information on petitioner's judgment of conviction, referring to the statutory table for a Class F felony with prior record level II without findings in aggravation, petitioner was therefore subjected to a presumptive minimum punishment range between 15 and 19 months, and a presumptive maximum punishment range, at the time of conviction, between 18 and 23 months. N.C. Gen. Stat. § 15A-1340.17(c) & (d); 2011 N.C. Session Laws S.L. 2011-192 (H.B. 642) § 2(e). He was subjected to a mitigated minimum punishment range between 11 and 15 months imprisonment, and a mitigated maximum punishment range between 14 and 18 months imprisonment. Id. Because petitioner's presumptive punishment maximum was 23 months, his extortion conviction qualifies as a predicate felony offense under Simmons. See United States v. Kerr, 737 F.3d 33, 38 (4th Cir. 2013) (holding that court must determine maximum punishment for Simmons purposes based on the presumptive punishment range). In any event, even considering petitioner's mitigated sentencing range, with 18 month maximum sentence, his extortion conviction would qualify as a predicate felony offense under Simmons. In either case, because the punishment range for petitioner's extortion conviction exceeds one year, his extortion conviction qualifies as a predicate felony offense under Simmons.

Petitioner suggests that his extortion conviction does not qualify under Simmons because he actually served only a term of probation. As an initial matter, this argument ignores the requirement under Simmons that it is the sentencing range, fixed by the statutory chart, that governs the analysis of whether petitioner's prior conviction is a felony offense. See Simmons, 649 F.3d at 240. Further, the statutory chart provided an option to the sentencing judge in petitioner's case to impose

6

either an active or intermediate term, constituting probation. N.C. Gen. Stat. §§ 15A-1340.17(c), 15A-1340.11(6). Moreover, the Fourth Circuit has confirmed that "[f]ollowing our decision in Simmons, we have rejected defendants' arguments that they lack the requisite predicate felonies because the actual sentence they received under North Carolina law was less than a year of imprisonment." Kerr, 737 F.3d at 38.

Accordingly, petitioner's claim under Simmons is without merit and must be dismissed.[1]

4.  Newly Discovered Evidence

Petitioner claims he is actually innocent of his conviction on the basis of newly discovered evidence, in the form of an affidavit by his daughter, dated June 18, 2012, and an addendum thereto, dated September 10, 2012. The government argues that this claim is without merit because the theory of innocence raised in the affidavit – that all the firearms found in petitioner's residence were planted there by petitioner's wife in furtherance of her scheme to portray herself to authorities as a victim of domestic violence – was already raised by defendant at trial and in post-trial motions.

To establish actual innocence on the basis of new evidence, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). "In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial," but is allowed "to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Id. at 327-28. In any case, a petitioner asserting actual innocence must

---

[1] Petitioner also filed a supplement on July 8, 2013, suggesting that the court should apply Alleyne v. United States, 133 S.Ct. 2151 (2013), and Descamps v. United States, 133 S.Ct. 2276 (2013) to his case. To the extent petitioner seeks to assert a claim on the basis of these cases also supporting his contention that he is actually innocent, the court finds such claim to be without merit. Petitioner was not subjected to a statutory mandatory minimum penalty. Cf. Alleyne, 133 S.Ct. at 2155. And, there is no need to apply Descamps, where extortion categorically constitutes a crime of violence for purposes of the § 2K2.1 offense level enhancement that petitioner received. Cf. Descamps, 133 S.Ct. at 2281. Accordingly, Alleyne and Descamps are inapposite.

7

meet the standard for sufficiency of the evidence set forth by the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979), namely that "[no] rational trier of fact could [find] guilt beyond a reasonable doubt," had it been given access to the newly discovered evidence. Herrera v. Collins, 506 U.S. 390, 401-02, 429 (1993) (White, J., concurring) (internal quotations omitted).

The affidavit submitted by petitioner fails to meet this standard for several reasons. First, it provides limited information regarding facts pertinent to the possession of firearms by petitioner. Petitioner's daughter states, for example, "that my father never gave me or my brother Pablo Claudio any type of Fire Arms for Christmas or Birthdays. He didn't have any guns strategically placed all over the house or yard at any time that we lived there. My mother made all these lies up." (DE 119-1 at 16). She also questions why there is no evidence that her father shot her twice, once with a rifle, and once with a BB-gun. (Id. at 13). She also contends that petitioner was not abusive to her or Maria Claudio, but rather that Maria Claudio was abusive to them. (Id.).

With respect to possession of firearms, this information is cumulative at best of other testimony offered by the defense at trial. The defense theory at trial was that all the firearms found in petitioner's residence were planted there by petitioner's wife in furtherance of her scheme to portray herself to authorities as a victim of domestic violence . (Tr. 43-44 (DE 91)). The defense offered testimony by petitioner's brother, Bruce Claudio, that in 2006 prior to his arrest petitioner sought to sell or give away all of his guns, and that Maria Claudio's brother, Evilio, took possession of them. (Tr. 43-44 (DE 91); Tr. 42-46 (DE 92)). Bruce Claudio further testified that on the day before the arrest, Maria Claudio and Evilio, stayed at petitioner's residence while petitioner was at a cookout with Bruce, thus providing Maria and Evilio an opportunity to plant the guns back into petitioner's residence. (Tr. 43-44 (DE 91); Tr. 46-51 (DE 92)). Bruce Claudio also testified that

8

he did not provide to petitioner the two firearms purportedly given as gifts to petitioner's children. (Tr. 43-44 (DE 91); Tr. 51 (DE 92)). Petitioner's brother, Jose Claudio, also testified that Maria Claudio had access to the safe where multiple guns were found by officers at the time of arrest. (Tr. 70-72 (DE 92). Petitioner's cousin, David Martin, testified that he had lent a firearm to petitioner for a time while he was in the military, but when Mr. Martin went to retrieve it in May 2008, petitioner did not have it in his house but rather directed him to retrieve it from Maria Claudio's brother. (Id.) The testimony of Bruce and Jose Claudio, as well as David Martin, thus was much more detailed regarding possession of weapons than the account provided in the affidavit of petitioner's daughter.

In addition, with respect to statements regarding abuse by petitioner's wife, the information in the affidavit serves at best as an additional piece of evidence pertinent to the defense strategy of undermining the credibility of Maria Claudio. "New evidence that merely undermines the state's theory of the case but does not rebut specific jury findings of guilt is insufficient to demonstrate actual innocence." Buckner v. Polk, 453 F.3d 195, 200 (4th Cir. 2006) (citing Herrera, 506 U.S. at 418-19). As such, the affidavit is insufficient by its nature to serve as evidence of actual innocence.

Furthermore, the government offered substantial contrary evidence of guilt at trial, and the affidavit considered with all the evidence does not warrant a finding that no rational trier of fact could have found petitioner guilty beyond a reasonable doubt. In particular, according to the government's evidence, while petitioner was being questioned by officers in his residence regarding a reported assault on a female, petitioner's wife, Maria Claudio, noted to officers that there were guns underneath a couch, prompting petitioner's statement that he was "holding the firearms for his

9

brother to keep them safe." (DE 91 at 104). Officers asked if there were any other firearms, and Maria Claudio brought them a 9mm handgun, and noted a safe contained several additional guns. In a subsequent search, officers located nine long guns in the safe and ammunition in the master bedroom closet. Upon subsequent search, petitioner stated "I don't know why you all are here; you all have already taken all of my guns." (DE 91 at 178). The government introduced additional evidence regarding the purchase history of several guns, evidencing purchase by petitioner or petitioner's brother. Maria Claudio testified about the events leading to petitioner's arrest, including the physical and sexual abuse precipitating the report of assault on a female, the identity of firearms in the home, petitioner's use of firearms in and around the home, including provision of firearms as gifts to his children.

Considered together, this constitutes substantial evidence of petitioner's guilt. While the affidavit, like the other defense evidence, raised a question regarding the credibility of Maria Claudio, it would be entirely the province of the jury to weigh the evidence and consider her credibility. See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). The affidavit therefore does not support a finding that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995).

Finally, even if petitioner's daughter would have, or could have, offered testimony at trial consistent with her affidavit, particularly concerning her allegation that her mother was abusive but her father was not,[2] substantial compelling evidence in the record existed to impeach such testimony.

---

[2] It is questionable whether testimony by petitioner's daughter regarding incidents of child abuse (or lack thereof) would have been admissible under the circumstances of this case. Notably, the defense offered testimony of petitioner's neighbor, Teresa Taylor, as to the nature of the relationship between petitioner and his wife, and that they "seemed like every other normal married couple." (Tr. at 97-98 (DE 92)). The court sustained an objection, however, to any testimony regarding petitioner's relationship with his children. (Id.).

10

Cf. United States v. Dunford, 148 F.3d 385, 392 (4th Cir. 1998) (pretrial statements by daughters were admissible where inconsistent with recantations at trial denying abuse, where abuse through use of guns was probative to felon in possession convictions). In particular, the government could have offered social services agency examination reports memorializing his daughter's statements regarding abuse and use of firearms by petitioner which sharply conflict with her later statements. (See e.g., DE 122-1 at 29; DE 66). Defense counsel reasonably could have made a strategic decision not to call petitioner's daughter as a witness, in light of these prior statements and information in the record, especially where the defense called several adults to testify to the same theory of defense. While petitioner continues to dispute the veracity of social services examination reports in his papers (See e.g., DE 122-1 at 29, petitioner's handwritten notes on social services agency examination reports), petitioner ignores that the substance of information contained in the examination reports is of such a level of detail and severity that any gains therefrom would be substantially outweighed by the inculpatory nature of the statements.

In sum, for all these reasons, petitioner has failed to state a claim of actual innocence on the basis of his daughter's 2012 affidavit and addendum thereto.

    5. Ineffective Assistance of Counsel

The court turns next to petitioner's claim of ineffective assistance of counsel, which is based upon multiple alleged errors by counsel at trial, including in failing to raise certain issues and arguments at trial. The government contends petitioner's ineffective assistance of counsel claim is without merit.

A successful claim for ineffective assistance of counsel requires petitioner to show that "(1) his counsel's performance fell below an objective standard of reasonableness in light of the

11

prevailing professional norms, and (2) 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bell v. Evatt, 72 F.3d 421, 427 (4th Cir. 1995) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Furthermore, there is a "strong presumption" when reviewing an attorney's performance that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Petitioner claims his counsel was inefficient in failing to raise argument or objection to numerous issues at trial, including (a) whether there was a violation of his right to speedy trial; (b) whether he was competent to proceed to trial and whether his brain condition warranted a change in sentence; (c) whether counsel failed to seek properly exclusion or suppression of damaging evidence, including the firearms as product of an unreasonable search; whether counsel failed to raise properly issues of false arrest and lack of probable cause; and whether counsel failed to challenge properly challenge or impeach false statements by government witnesses, including Maria Claudio, her brother, a social services worker, and officer Keech; and (d) whether counsel failed in not introducing testimony of his children.

    a. Speedy Trial

Petitioner contends counsel failed to properly assert a violation of his speedy trial rights. The Speedy Trial Act provides that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Certain delays

"shall be excluded" when calculating the seventy-day time period. 18 U.S.C. § 3161(h). In pertinent part, "[a]ny period of delay resulting from a continuance . . . , if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" shall be excluded. 18 U.S.C. § 3161(h)(7); see Zedner v. United States, 547 U.S. 489, 498–99 (2006).

In this case, indictment was filed June 18, 2009, and a detention hearing was held July 1, 2009. On July 24, 2009, defendant filed a motion for extension of time to file pretrial motions and to continue arraignment and trial, and the court granted the motion based upon "defense counsel's need for additional time to consult with the defendant, to thoroughly review discovery and to fully investigate the facts of the case." (DE 18). In addition, the court found that "the ends of justice served by granting this continuance outweigh the best interests of the public and the defendant in a speedy trial." (Id.) The period of delay necessitated by this continuance was thus excluded from speedy trial computation pursuant to 18 U.S.C. § 3161(h). Following arraignment, on September 10, 2009, the court held a scheduling conference at which the court set trial to commence December 2, 2009, and at said conference both defendant and the government "consent[ed] and "waiv[ed] speedy trial time." (Minute entry, September 10, 2009). Accordingly, on the basis of these continuances, upon request of the parties, there was no speedy trial violation. Where there was no speedy trial violation, counsel was not deficient in failing to raise an argument on the basis of speedy trial violation. And, to the extent petitioner suggests counsel was ineffective in requesting a continuance or consenting to a trial date, while waiving speedy trial time, this suggestion lacks support in the record, where the court expressly found that the defendant had demonstrated a "need for additional time to consult with the defendant, to thoroughly review discovery and to fully

13

investigate the facts of the case." (DE 18).

Accordingly, petitioner's ineffective assistance of counsel claim on this basis must be denied.

      b. Mental capacity

Petitioner argues that counsel was ineffective in failing to raise an issue of petitioner's competence to proceed to trial, and in failing to argue that his brain condition warranted a reduction in sentence, or in failing to investigate his mental capacity further.

A defendant is mentally competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." United States v. Johnson, 490 F. App'x 566, 567 (4th Cir.2012) (citing Dusky v. United States, 362 U.S. 402, 402 (1960)). At the detention hearing in this case, the defendant affirmed that he was not under the effect of any kind of medication, drug, or substance that would prevent him from understanding the proceedings. (DE 22 at 3). The defendant also affirmed that he did not know of any reason why he would not be able to understand the proceedings on that date. (Id.). Defendant points to no basis upon which counsel should have questioned petitioner's competence to proceed to trial. While he cites to his diagnosis of having an undersized brain, which was noted also in the presentence investigation report (DE 72 at 28), there is no indication along with that diagnosis, or anywhere else in the record, that this deformity undermined petitioner's "present ability to consult with his lawyer with a reasonable degree of rational understanding" or "whether he ha[d] a rational as well as factual understanding of the proceedings against him." Johnson, 490 F. App'x at 567. Accordingly, petitioner has not established that counsel was deficient in failing to raise petitioner's competence to proceed to trial.

For the same reason, petitioner has failed to establish that his counsel was ineffective in

14

failing to raise his brain condition as a basis for sentence reduction, or in failing to investigate his mental capacity further. While numerous medical issues, as well as mental and emotional health issues, are noted in the presentence report, the report notes that "the defendant, upon the advice of counsel, declined to sign the appropriate release of information, . . . to confirm" the issues raised. (DE 72 at 28). Under circumstances of this case, the decision not to pursue or present to the court documentation of mental and emotional health issues, thus was a strategic decision for which counsel is to be afforded wide latitude. Particularly in a case where petitioner's abusive conduct towards his wife and family was raised by the government as a basis for upward departure, counsel reasonably could have determined that information disclosed during mental health treatment, and any admissions located therein, could have undermined the theory of defense in the case (and jeopardized defendant in parallel proceedings in state court),[3] and also further impacted negatively the court's sentencing determination. See Strickland, 466 U.S. at 681("[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial."). This strategic choice is reflected in the sentencing memorandum submitted on behalf of defendant, in which it was asserted in opposition to the government's motion for upward departure on the basis of extreme psychological injury that "Mr. Claudio denies the alleged abuse recounted in the PSR, alleged conduct which does not constitute either the offense of conviction or relevant conduct." (DE 71 at 10). Likewise, in

---

[3] For example, the presentence report notes that "[d]uring the pretrial interview, [petitioner] indicated that at the direction of his state defense attorney, he completed the first half of a two-part evaluation with Dr. Ray Webster in Greenville, North Carolina . . . however, it is unknown if the evaluation was completed, as the defendant declined to sign the appropriate release of information." (DE 72 at 28). Defense counsel at sentencing further requested that the federal court not consider defendant's alleged conduct in chaining his wife in the closet, as this was a matter best left to the state court in state court proceedings. (DE 89 at 165).

15

objections submitted on behalf of defendant, it was stated that "[t]he defendant denies that he repeatedly mentioned killing himself and/or his family," and that "he wanted to shoot himself in the head so that his family would have to clean up his blood and brains." (DE 72 at 28). Instead, as demonstrated at the sentencing hearing, defense counsel sought to portray to the court, consistent with the approach at trial, that petitioner was a caring father, devoted to his children, who was able to engage in numerous family outings and provide for his children. (DE 89 at 156-165). Petitioner, at sentencing, also advanced this theory of defense in his statement to the court. (Id. at 170-71).

Accordingly, petitioner has failed to establish that counsel was ineffective in failing to raise mental health issues as a basis for sentencing reduction, and in failing to investigate them further.

    c. Failure to exclude or challenge damaging evidence

The court turns next to petitioner's claims that counsel was ineffective in failing to seek properly exclusion or suppression of damaging evidence, including the firearms as product of an unreasonable search; failing to raise properly issues of false arrest and lack of probable cause; and in failing to challenge properly challenge or impeach false statements by government witnesses, including Maria Claudio, her brother, a social services worker, and officer Tony Keech.

The record reflects that counsel, in fact, raised arguments and objections in an effort to exclude or suppress damaging evidence pertaining to these issues, to the extent available under existing case precedent. In particular, counsel moved to suppress statements made by law enforcement following his arrests on June 29, 2008 and July 2, 2008, including statements by Tony Keech. (DE 31 at 2). Counsel argued that the statements were inconsistent with statements ascribed to petitioner in officers' reports, and that the statements were elicited without first advising petitioner of his Miranda rights. (Id.). At hearing, counsel challenged at length officers' accounts

of events relating to statements attributed to the defendant, including the officers' account of the search and questioning of defendant, as well as whether and for what reason officers' had probable cause to detain defendant in his house. (DE 41 at 9-19; DE 43 at 8-12).

At trial, counsel argued for exclusion and objected to numerous items of evidence and proposed testimony, including alleged gifts of firearms from petitioner to his son and daughter; testimony that the defendant threatened to kill his wife, children, and himself; testimony regarding use of weapons for target practice; pictures of his children holding weapons; the events of the night before petitioner's arrest including alleged abuse of petitioner's wife. (DE 91 at 6-25). At trial, counsel examined again the officers' regarding factual basis for the search, probable cause, and whether defendant was lawfully questioned in accordance with his Miranda rights. (DE 91 at 67-68; 111-114)

Counsel also moved to exclude testimony by Maria Claudio concerning petitioner's firearms, threats, rape, assaults, and marital communications, on the basis that they were inadmissible as not related in time to the charged offense, and not otherwise admissible under Rule 404(b) and protected by marital communications privilege. (DE 31 at 4-5). Counsel further argued in favor of limiting such damaging information at trial. (DE 91 at 141-4). In addition, by separate ex parte motion, counsel sought to obtain Ms. Claudio's complete Alien File from the Department of Homeland Security, to confirm her status as an illegal alien and possession by her and her brother, who was also noted to be an illegal alien, of firearms. (DE 36 at 1-2). Counsel also pursued additional avenues for impeaching Ms. Claudio's testimony, as well as her brother, Acosta Felix, based upon their illegal immigrant status and other elements of their record. (DE 91 at 129-136).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct

17

so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This is not the case here. As the above recitation demonstrates, counsel forcefully and tactfully raised before the court the issues petitioner claims counsel failed to address properly. While petitioner suggests that counsel should have made legal arguments in a different manner or pursued additional avenues of argument to suppress damaging or inculpatory information, such arguments do not provide a basis for a successful ineffective assistance of counsel claim. "There are countless ways to provide effective assistance in any given case," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Petitioner has not overcome this presumption here.

            d. Failure to subpoena testimony from petitioner's daughter

Finally, petitioner contends that counsel was ineffective in failing to interview and present testimony of his children, which he contends would have been consistent with the 2012 statements of his daughter. This argument fails for the same reasons as petitioner's actual innocence claim. Because of the availability of other evidence supporting the defense theory, and because of the existence of substantial documentary impeaching evidence contrary to the 2012 statements, petitioner has not "overcome the presumption that, under the circumstances, the challenged action" – in this case declining to interview and present testimony of petitioner's children – "might be considered sound trial strategy." Strickland, 466 U.S. at 689.

Petitioner suggests that counsel was ineffective in failing to insist upon having the court review a DVD video of the children discussing their abuse. At sentencing, where the video was raised, the government expressed its view that the video supported its position that petitioner abused

18

them and his wife. (DE 89 at 176). Defense counsel described the nuances of the video for the court, noting that it portrayed a one-sided impression of the abuse of the children, and suggested that the social worker who was involved in the video steered the children to testify against their father. (Id. at 159). The court expressed that it understood the nuances of the evidence regarding abuse and limited its consideration appropriately, while also recognizing the strength of the government's showing. (Id. at 163-165). In these circumstances, further pursuit of the video before the court was neither necessary for effective representation, nor something that would probably have influenced the outcome of the proceedings.

In sum, based upon the foregoing, petitioner's ineffective counsel claim must be dismissed.[4]

C.  Certificate of Appealability

A § 2255 applicant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Where a petitioner's constitutional claims are dismissed on procedural grounds,

---

[4] Petitioner also suggests in his heading of argument in his brief that he received ineffective assistance of counsel on appeal. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000). In this case, petitioner has not presented any issues clearly stronger than those presented on appeal. Accordingly, petitioner's claim of ineffective assistance of appellate counsel must be dismissed.

19

a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir.2001) (quoting Slack, 529 U.S. at 484).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court concludes that reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and that none of the issues presented by petitioner are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

Based on the foregoing, the government's motion to dismiss (DE 116) is GRANTED, and petitioner's § 2255 motion (DE 112) is DISMISSED WITH PREJUDICE. Petitioner is DENIED a certificate of appealability.

SO ORDERED, this the 13th day of February, 2014.

LOUISE W. FLANAGAN
United States District Judge